Good morning, Your Honors. May I please the Court, Kenneth Sigelman for Appellant A.A., a minor? I would request that I be permitted to reserve two minutes of my time for rebuttal. Certainly. Thank you, Your Honor. In light of the District Court's initial denial of the motion for summary judgment, it appears that the sole basis for the Court's granting reconsideration and then ordering summary judgment was the Okafor decision. And so the issue before the Court today is a narrow one, which is whether Okafor is materially distinguishable from the present case and whether Okafor created a bright-line rule that any issue involving delay in delivery of a claim cannot under any circumstances constitute equitable tolling. I believe that there is a material distinction between the facts of the present case and the facts of Okafor. And second, I believe that the supporting authority that was cited by the Okafor Court would be applied too broadly if it were used to establish some sort of bright-line exclusion for any delivery-related issues. Let's assume you're right, that Okafor is not an absolute bar. What are the facts here that would justify any sort of exception to the application of the rule? The sole issue that I'll respond to, Your Honor, is with regard to this delivery issue, because the district court otherwise found sufficient disputed material facts so as to deny summary judgment. With regard to the delivery issue, the material distinction here is that there was a specific representation that was online from an establishment created by the executive branch of the United States government that first-class mail would be delivered within three days. That was what the appellant relied on at the time that the claim was sent by certified U.S. mail. Given that we're talking about equitable tolling and concepts of equity necessarily invoke the conduct of all of the parties, the United States conduct certainly contributed to the fact that the claim was not received. The United States, you're saying the post office? Correct. It's not the entire federal government. This is the post office. Isn't it common knowledge that sometimes mail gets delayed? There's a window of time within which you can reasonably expect that it will be delivered, but you can't take that guarantee to the bank that it is going to be delivered within X number of days, can you? The post office online posted a range from one to three days, and the credo, certainly not representation with binding legal effect, but the credo posted on the post office building in New York that everybody always keeps in mind, is that neither snow nor rain nor heat nor gloom of night stays these couriers from the swift completion of their appointment. It doesn't mean that it will never be delayed. I think that's aspirational. Let me ask you this. You're relying on equitable principles here, are you not? Yes, Your Honor. And in the classic situation of equitable estoppel, it's harder to estop the government than it is a private party. Now, in this case, we have said, well, you can't rely on FedEx, but now you're saying that we should estop essentially the post office because it's part of the government. Does that make sense? Isn't that backwards? Your Honor, I'm not suggesting that there should be a bright line the other way, where any time the government's conduct is involved in contributing to the delay, that the doctrine of equitable tolling applies. Appellant's position is that the district court should be specifically allowed to consider that information as part of making a decision as to whether or not equitable tolling applies. In response to His Honor's question from a moment ago about, well, isn't it a fact that not always do things get delivered within the time that they state, I think that's true. But given, I think, what the popular perception is of the United States mail and the unofficial credo that I refer to, it is a highly unusual, meaning an extraordinary circumstance, when it's not timely. And that's the point here. An extraordinary circumstance when it's delayed and it's delivered in four calendar days instead of three? One to three. No, but I'm saying here, if it would have been delivered in three, it would have been timely. It was, in fact, delivered in four. And so you're saying that's an extraordinary circumstance? I believe it is, Your Honor, because if they post that on their Web site, the post office knows that the public is going to be relying on that. Then why do they have express mail? They have express mail for delivery that I believe is within two days. Well, let me ask you this. Does your theory assume or require us to assume that the United States be treated as one monolithic entity for purposes of equitable tolling that would include in that entity both the U.S. Postal Service as well as the Vista Community Clinic? Only the United States is the defendant in the case, Your Honor. So I don't believe there's any legal authority that the government has cited which suggests, which supports its position in the brief that, well, they're separate agencies. They're separate agencies, but they're separate agencies of the monolithic defendant in this case. For example, we would not have been allowed to sue Dr. Myers and other individual practitioners. But there's plenty of cases, aren't there, like in the relation back doctrine, that knowledge possessed by one United States agency will not be imputed to the United States as a whole. How are those cases, and there's plenty of them, consistent with what you're asking us to do here? Because this is a specific application of an equitable doctrine. It's not for purposes of imposing a legal duty. It's an equitable concept, and the concept is that both parties' conduct should be considered. The fact that it's not the identical agency. What about the fact, counsel, that we have said specifically in the equitable tolling context that routine mistakes like a lawyer filing at the last minute or a lawyer putting things in the mail at the last minute is something more than routine negligence run-of-the-mill cases and that that wouldn't really trigger equitable tolling. What's the difference between those cases and here? This was not a mistake. There was a strategic reason to file as close as possible to the end of the statutory period, which is that in a childbirth case, even more so in this one where it was an extreme preterm, extreme low birth weight baby, it takes a very long time in many cases, years, before the damages can be fully ascertained. The appellant would have been in a position had he proceeded more expeditiously of facing expert disclosures, discovery and even trial when his future damages were likely speculative. That's a fair point. But wasn't there about six years between the birth and the filing, give or take? There was. Okay. So wasn't it a mistake to file three days before the deadline as opposed to two weeks or maybe a month before the deadline? I'm not following the state statute. I apologize. If the AA's counsel would have put this in the mail, given the notice in the mail, two weeks before the deadline or 30 days before the deadline, you wouldn't have lost any of the procedural benefits that you've just described, and it would have been far less likely that it would have been untimely received by the agency. So in hindsight, wasn't it a mistake to not mail it to the agency a few weeks before as opposed to three days before? And isn't that routine negligence? It's a fair point, Your Honor. But, again, the longer the wait before filing, the more likely there will be expert opinions to reasonable medical probability. Would 30 days have made any difference at all on that point? It might have. I can't say. Two weeks just to build in that little cushion for lost or delayed mail? In 2020 hindsight, yeah. It's a slippery slope argument, Your Honor, and in terms of medically speaking the issues of trying to predict the future for a child like this, it's impossible to find a time certain when that should dictate proceeding. In this case, proceeding on June 4th, which was four days before, based on a website put up by the United States Post Office, seemed prudent. Do most lawyers under these circumstances file literally only, you know, a day or two or three days before the final deadline? And if not, would the opinion going in the direction that you're urging basically encourage everyone to do that? I can only speak anecdotally, Your Honor, but I have a fair amount of anecdotal experience. I was chair of the statewide plaintiff lawyer association medical malpractice committee for a decade. It's very common to proceed this way in childbirth cases for the reasons that I've mentioned. Thank you, counsel. We've taken you over your time, but I'll put two minutes back on the clock for rebuttal. Thank you very much, Your Honor. Good morning, Your Honor. Assistant U.S. Attorney Steve Chu on behalf of the United States. Right off the bat, Your Honor, I want to respond to the point that Mr. Siegelman raised regarding the United States Postal Service. For the proposition that he relies upon that there is a representation from the Postal Service, he points to the Postal Service website. However, if one goes to that website and reads through it, one will see that on the website itself, the post office says that delivery times are not guaranteed for first-class mail. The only type of mail that has any form of guarantee is, as Judge Simon pointed out, the sort of next-day express mail. And the guarantee in that situation just says we will guarantee delivery or you will get your money back that you paid. But it doesn't actually guarantee it to the point of, okay, we will be responsible for it. Does it make any difference, counsel, in this particular case that it was the government or governmental agency that caused the delay? I mean, four days, that's a long time to deliver a piece of mail. And so should that be attributed to the government defendant in this particular case? So a couple of responses to that, Your Honor. First of all, no, because as has been discussed earlier, the government is not a monolith. The government is very large. There are offices all across the country. HHS alone has over 80,000 employees, 12 major offices, 13 field offices. It is very difficult and impractical, as cases have acknowledged, to hold one branch of the government or one agency responsible for the alleged failure or inaction of another agency when those agencies don't, in fact, interact or their employees are completely different, located in different geographic locations. Further, it is not even clear that the mail was, in fact, laid here. If we look closely at the evidence, the declaration that was submitted by opposing counsel in the summary judgment phase stated that the envelope in question was created at 3 p.m. on the day, June 4, 2009. It's unclear when, in fact, it was mailed, but 3 p.m. we're already getting towards the end of the day. It is entirely conceivable that it was not dropped into the mail until a little bit later and then not, in fact, picked up until the next day, in which case the delivery would have, in fact, been within the three working days that we're talking about. Additionally, back to the post office website, when one looks at the representations that are made, the post office actually describes and says one has to take into account when looking at delivery times where it's coming from and where it's going. Here it's going from San Diego all the way across the country to Washington, D.C., and then there are also possible issues with regard to weather and other situations that may arise. So it is not entirely clear that the post office was, in fact, late. And in either event, even if setting that issue aside, it was still addressed to the wrong address. It got to a location where the claims office was no longer located, claims office had moved years before, and this was advertised on the website. It was not information that was hidden. So there was no, it would not have been difficult for an attorney seeking to submit this claim properly to locate, number one, the correct address. Remind me, counsel, does the post office consider Saturday a business day? You know, that is a good question. I don't believe it was considered. It was mailed on Thursday and then the deadline's Monday. Correct. So June 4, 2009 is the Thursday. If it's picked up on Friday, June 5, then we look within three business days from the Friday. If we count the Saturday, we still get to 8th is a Monday, 9th is a Tuesday. 9th is the date in which it, in fact, was delivered to, again, the incorrect address, the Parkland building. And there are some other cases in other contexts in which it says that postal business days include Saturday. Yes. So, yeah. So I can speak further to the timing issue if there are questions on that, but it's also important to point out that, as has been discussed by this Court's very decision in Okafor, in that case, as has been pointed out, the carrier involved was Federal Express. We're all familiar, I believe, with the Federal Express motto that if it absolutely positively has to be there by the next day, use Federal Express. Federal Express, many people would consider to be more reliable, more quick than a postal service. And, therefore, if even an alleged late delivery by Federal Express is not enough for equitable tolling, then a 4-T-O-R-I going down with the postal service, which has now represented that you're not even asking for next-day delivery, you're going regular first-class delivery, it would be even more unreasonable to rely upon first-class delivery. Although would this be a different case if the agency that allegedly caused the underlying harm was the postal service and then you used the postal service to give notice and they delayed it? So that's an interesting point. You're saying, Your Honor, if the postal service caused the actual injury? Yeah. I think the answer is yes, but it's not this case. We've not had that situation arise.  The postal service branch of the government is now somehow complicit. The typical postal service cases are vehicle accidents because there are, I believe, 100,000 carriers on the road every day. So I suppose the situation you're asking is if there was a traffic accident and then the postal service was late in delivering its own claim to its own office. I mean, that may be different. We'll worry about that another time. Hopefully not, but yes, perhaps, Your Honor. So that's the issue with regard to the timing. I mean, not only is it late, but it is also late to the wrong address. And even if we look at plaintiff has tried to argue, push this idea that it was one day late, but it's important to note that, as the courts have acknowledged, it's not the length of the delay that is important for equitable tolling purposes. It is the reason for the delay. And as Your Honors have pointed out, late mail delivery is not an extraordinary circumstance. It's more of a garden variety type of negligence. And further, we have, again, it's going to the wrong address. So although there are applicable codes of federal regulations that state, well, even if it's to the wrong address, but if it still somehow gets to a federal agency, that agency still has to forward it on, even in that situation, the applicable CFR says the claim is still not received until it is actually received at the correct address. So then we would be even beyond one day. We could be several days, several weeks even. And if one even looks at the claim itself, which are rather at the return receipt, which is at 237, 238 of the excerpts of record, the address on there does not even say HHS. It just says claims officer. The CFR says that if it arrives at the wrong agency, then that agency has to forward it on to the correct address, if it can do so. It has to be able to make it out. And in this case, we submit there's not even enough information to do that. So there are multiple concerns there. I have other issues that I can cover, but I'd rather respond to questions if there are concerns by Your Honors. I don't have any. It looks like we don't have any questions. Thank you very much for your argument. Thank you, Your Honor. You wanted to save two minutes, Counsel, so I'll give you that on rebuttal. Counsel has gone well beyond the scope of the issue that is presented to this court on appeal. The circumstances regarding the wrong address, the district court specifically found that there were issues of fact there that would have to be decided at trial. And in effect, Counsel would be asking for some type of advisory opinion from this court regarding those issues before that case has even been tried. Additionally, Counsel's comments about what else is on the post office website, I don't believe were in the record that I've looked at on this appeal. Finally, the Okafor decision cited two cases, Luna versus Kernan and Lawrence versus United States, to support the idea that the delivery delay in that case does not invoke equitable tolling. Reading those cases closely, neither involved anything close to that issue. Luna involved an issue where a petitioner in a habeas case, petitioner's attorney had voluntarily dismissed an initial petition and failed to file the requisite petitions thereafter and then made misrepresentations to the client about it. Lawrence versus United States involved miscalculation of the deadline. That's not here. Okafor really stands on its own as a single case that involves Federal Express, which for the reasons that have already been stated in the brief and earlier this morning, are materially distinguishable. Was Okafor wrong? Was Okafor wrongly decided in your view? No, Your Honor. I'm not here to argue that Okafor was wrongly decided. I understand that. It's the law. I'm just asking, you're bound by it, we're bound by it. Yes. But in a perfect world, you would not have decided it that way. In a perfect world, it should be limited to its facts, Your Honor, because the underpinnings of it that are cited have very flimsy records in terms of trying to apply those facts to these. Thank you very much. All right. Thank you very much, Counsel. The matter is submitted for decision. And that concludes our argument calendar this morning. We're in recess. Thank you. All rise.
judges: Schroeder, Nguyen, Simon